**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

MI KYUNG BYUN, aka Mi Kyung
Mechanic,
*Defendant-Appellant.*

No. 07-10254

D.C. No.
CR-00-00049-JSU

OPINION

Appeal from the United States District Court
for the District of Guam
John S. Unpingco, District Judge, Presiding

Argued and Submitted
September 26, 2007—San Francisco, California

Filed July 1, 2008

Before: John R. Gibson,* Marsha S. Berzon, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Berzon

---

*The Honorable John R. Gibson, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

## COUNSEL

Howard Trapp, Hagatna, Guam, for the defendant-appellant.

Kevin R. Gringas, Washington, D.C., for plaintiff-appellee Department of Justice.

## OPINION

BERZON, Circuit Judge:

After Mi Kyung Byun pleaded guilty to a violation of 8 U.S.C. § 1328, "importation into the United States of any alien for the purpose of prostitution," the district court determined that she had committed a "sex offense" within the meaning of Section 111 of Title I of the Adam Walsh Child Protection and Safety Act of 2006 ("Act" or "Walsh Act"), Pub. L. No. 109-248, 120 Stat. 587, 591 (codified at 42 U.S.C. § 16911), and is therefore subject to the Act's registration requirements. Byun appeals that determination, maintaining that her offense is not covered by the Act. We conclude that Byun's offense is a "specified offense against a minor" and therefore a "sex offense" within the meaning of the Act.

I.

Mi Kyung Byun and her husband owned and operated a night club in Guam, Club Azabu. At the club, Byun maintained two rooms in which female employees could engage in sexual acts with the club's clients. Byun also arranged for her female staff members to leave the club with clients and have sex with them for a fee.

Byun was indicted on May 31, 2000 on four counts of alien smuggling, including one count of importing aliens into the United States for purposes of prostitution, in violation of 8 U.S.C. § 1328, and one count of transporting a minor in foreign commerce with the intent that the minor engage in prostitution, in violation of 18 U.S.C. § 2423(a). She ultimately pleaded guilty to three counts of alien smuggling in violation of 8 U.S.C. §§ 1324 and 1328, but did not plead guilty to transporting a minor for purposes of prostitution in violation of 18 U.S.C. § 2423(a). In the plea agreement, Byun admitted that she "induced" Youn Be Seo, a citizen of Korea, "to come to Guam by offering to employ [her] at the Club . . .

intend[ing] that during the course of [her] employment at the Club . . . [she] would engage in sexual contact with the Club's customers, and perform sexual acts for money," and acknowledged that "[a]t the time [Byun] solicited Youn Be Seo to come to Guam, and at all times thereafter, [Byun] knew Seo was seventeen years old." At sentencing, the district court sentenced Byun to fifteen months imprisonment and three years of supervised release.

On July 27, 2006, while Byun was on supervised release, Congress passed the Walsh Act. Title I of the Walsh Act, the Sex Offender Registration and Notification Act ("SORNA"), requires every jurisdiction in the United States to maintain a sex offender registry that complies with SORNA's specifications. 42 U.S.C. § 16912.[1] SORNA defines the terms "sex offenders," and "sex offense," mandates that sex offenders register, and divides sex offenders into "tiers," based on the severity of their crime, which determine the details of the registration requirement. § 16911.

In response to the Walsh Act, Byun's probation officer determined that Byun was a tier II sex offender subject to SORNA's registration requirements and provided her an "offender notice and acknowledgment of duty to register as a sex offender." Byun signed the form and registered with the Sex Offender Registry Office the same day. Nine days later she filed a motion requesting that the district court "vacat[e] and set[ ] aside the determination" of the probation officer, because she "has never been convicted of a sex offense."

The district court denied the motion, holding that Byun had been convicted of a "sex offense" within the meaning of SORNA, is therefore a "sex offender," and is properly classified as a "tier II sex offender." Byun appeals the determination that she is a sex offender for purposes of SORNA.

_____

[1]All statutory citations are to Title 42 of the United States Code unless otherwise indicated.

## II.

[1] The Sex Offender Registration and Notification provisions of the Walsh Act are intended to "establish[ ] a comprehensive national system for the registration" of "sex offenders and offenders against children." § 16901. Section 111 of SORNA identifies those individuals who are subject to the registration requirement. According to section 111, a "sex offender" is "an individual who was convicted of a sex offense." § 16911(1). A sex offense, in turn, is:

> (i) a criminal offense that has an element involving a sexual act or sexual contact with another; [or]
>
> (ii) a criminal offense that is a specified offense against a minor . . . .[2]

§ 16911(5)(A). "Specified offense against a minor" is defined in a separate provision:

> (7) Expansion of definition of "specified offense against a minor" to include all offenses by child predators
>
> The term "specified offense against a minor" means an offense against a minor that involves any of the following:
>
> > (A) An offense (unless committed by a parent or guardian) involving kidnapping.
> >
> > (B) An offense (unless committed by a parent or guardian) involving false imprisonment.

---

[2]SORNA also includes in the definition of sex offenses certain specified federal crimes not relevant here, § 16911(5)(A)(iii); certain military offenses, § 16911(5)(A)(iv); and an attempt or conspiracy to commit any sex offense, § 16911(5)(A)(v).

(C) Solicitation to engage in sexual conduct.

(D) Use in a sexual performance.

(E) Solicitation to practice prostitution.

(F) Video voyeurism as described in [18 U.S.C. § 1801].

(G) Possession, production, or distribution of child pornography.

(H) Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct.

(I)   Any conduct that by its nature is a sex offense against a minor.

§ 16911(7).

[2] Section 111 goes on to divide sex offenders into three "tiers," depending on the nature of their offense. Tier II sex offenders — the category that, according to the district court, includes Byun — are, as here pertinent, those

whose offense is punishable by imprisonment for more than 1 year and—

(A) [whose offense] is comparable to or more severe than the following offenses, when committed against a minor, or an attempt or conspiracy to commit such an offense against a minor:

(i)  sex trafficking (as described in [18 U.S.C. § 1591[3]]);

---

[3]18 U.S.C. § 1591 provides, in relevant part, that "[w]hoever knowingly . . . in or affecting interstate or foreign commerce . . . recruits, entices, har-

(ii) coercion and enticement (as described in [18 U.S.C. § 2422(b)[4]]);

(iii) transportation with intent to engage in criminal sexual activity (as described in [18 U.S.C. § 2423(a)[5]]);

(iv) abusive sexual contact (as described in [18 U.S.C. § 2244]); [or]

(B) involves—

(i) use of a minor in a sexual performance;

(ii) solicitation of a minor to practice prostitution; or

---

bors, transports, provides, or obtains by any means a person . . . knowing that . . . the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished . . . ." *Id.* § 1591(a).

[4]18 U.S.C. § 2422(b) provides that:

Whoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

[5]18 U.S.C. § 2423(a) provides:

**Transportation with intent to engage in criminal sexual activity.**—A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory, or possession of the United States, with the intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

> (iii) production or distribution of child por-
> nography; . . .

§ 16911(3).

[3] Sex offenders must "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." § 16913(a). To keep her registration current, an offender must, "after each change of name, residence, employment, or student status," appear in person in one of the jurisdictions in which she is required to register and notify it of the changed information. § 16913(c). In addition, all sex offenders are required to "appear in person" at regular intervals: "each year, if the offender is a tier I sex offender; . . . every six months, if the offender is a tier II sex offender; and . . . every 3 months, if the offender is a tier III sex offender." § 16916. The duration of the registration requirement varies depending on the tier of the sex offender: tier I sex offenders must comply with the registration requirements for a period of 15 years; tier II sex offenders, for a period of 25 years; and tier III sex offenders, for life. § 16915(a).

[4] The consequences of failing to comply with SORNA's registration requirements are significant. A sex offender may be imprisoned for up to ten years for knowing failure to comply with SORNA's requirements, and an individual convicted of a crime of violence after failing to comply with the registration requirements is subject to a mandatory minimum five-year term of imprisonment.  18 U.S.C. § 2250(a), (c).

## III.

The question before us is whether Byun's conviction for importation of an alien for purposes of prostitution, 8 U.S.C. § 1328, makes her a "sex offender" for purposes of SORNA and thus subject to its registration requirements.[6] We conclude

---

[6]This is a question of first impression in this circuit. Although there are a number of district court decisions in other circuits regarding SORNA,

that Byun's conviction under 8 U.S.C. § 1328 — which her plea agreement reveals was committed against a minor — is a "specified offense against a minor" and therefore a sex offense. § 16911(7)(I).

A.

Byun was convicted of a violation of 8 U.S.C. § 1328, which provides, in relevant part, that:

> [t]he importation into the United States of any alien for the purposes of prostitution, or for any other immoral purpose, is forbidden. Whoever shall, directly or indirectly, import, or attempt to import into the United States any alien for the purpose of prostitution or for any other immoral purpose, or shall hold or attempt to hold any alien for any such purpose in pursuance of such illegal importation, or shall keep, maintain, control, support, employ, or harbor in any house or other place, for the purpose

they address retroactivity issues and constitutional challenges based on the Ex Post Facto Clause, the non-delegation doctrine, the Commerce Clause, and the Due Process Clause, not the appropriate interpretation of the "sex offender" definition. *See, e.g., United States v. Madera*, 474 F. Supp. 2d 1257 (M.D. Fla. 2007) (retroactivity, nondelegation doctrine, Ex Post Facto, Due Process, and Commerce Clauses), *rev'd*, No. 07-12176, 2008 WL 2151267 (11th Cir. May 23, 2008) (reversing district court's retroactivity determination); *United States v. Mason*, 510 F. Supp. 2d 923 (M.D. Fla. 2007) (retroactivity, nondelegation doctrine, Ex Post Facto, Due Process, and Commerce Clauses); *United States v. Templeton*, No. CR-06-291, 2007 WL 445481 (W.D. Okla. Feb. 7, 2007) (retroactivity, Ex Post Facto, Due Process, and Commerce Clauses); *United States v. Kapp*, 487 F. Supp. 2d 536 (M.D. Pa. 2007) (retroactivity); *United States v. Roberts*, No. 07-70031, 2007 WL 2155750 (W.D. Va. July 27, 2007) (retroactivity); *United States v. Hinen*, 487 F. Supp. 2d 747 (W.D. Va. 2007) (retroactivity, nondelegation, Due Process, Equal Protection, and Commerce Clauses). Byun has not raised a challenge to the retroactivity or constitutionality of SORNA.

> of prostitution or for any other immoral purpose, any
> alien, in pursuance of such illegal importation, shall
> be fined under Title 18, or imprisoned not more than
> 10 years, or both.

Thus, at a minimum, conviction under the applicable provisions of 8 U.S.C. § 1328 requires proof that (1) defendant imported a person into the United States; (2) that person was an alien; and (3) defendant imported the alien for the purpose of having him or her engage in prostitution or for some other immoral purpose.[7]

We assume for purposes of our initial analysis, in Part III.A, that we may consider the fact that Byun's crime was committed against a minor, even though the age of the victim was not an element of her crime of conviction. Having determined that, assuming the age of Byun's victim is taken into account, her crime was a sex offense, we then consider in Part III.B whether the statute might instead require a categorical approach to the age of the victim of the crime, and conclude that it does not.

[5] Under SORNA, Byun qualifies as a "sex offender" if she was convicted of a "sex offense." § 16911(1). A "sex offense" is defined as either "a criminal offense that has an element involving a sexual act or sexual contact with another," § 16911(5)(A)(i), or "a criminal offense that is a specified offense against a minor," § 16911(5)(A)(ii). Byun's offense entailed the importation of a seventeen-year-old woman into Guam with the intent that she engage in sexual contact with customers in Byun's club. We conclude this offense was a "specified offense against a minor," and thus qualifies as a

---

[7]Although the statute allows conviction both for importation for the purpose of prostitution and for importation for some other immoral purpose, we conclude, for purposes of our analysis, that Byun was convicted of importation for the purpose of prostitution, as the charging documents so indicate.

sex offense under § 16911(5)(A)(ii). Because we hold Byun committed a sex offense under § 16911(5)(A)(ii), we do not address whether Byun's crime qualifies as a sex offense under § 16911(5)(A)(i) ("a criminal offense that has an element involving a sexual act or sexual contact with another").[8]

[6] Turning to the list of "specified offense[s] against a minor," we find that the crime of which Byun was convicted does not neatly correspond to any of the listed "specified offenses." In particular, whether Byun was convicted of or admitted to "[s]olicitation to practice prostitution," § 16911(7)(E), the most likely listed crime, is not clear. Solicitation is generally defined as "[t]he criminal offense of urging, advising, commanding, or otherwise inciting another to commit a crime." BLACK'S LAW DICTIONARY (8th ed. 2004).

___

[8]In her brief, Byun primarily argues that her offense is not one having an "element involving a sexual act or sexual contact with another" because it does not require that *any* individual actually engage in a sexual act. Many of the specified offenses against a minor, however, do not require that any person engage in a sexual act. *See* § 16911(7)(A)-(G). As we ultimately conclude that Byun's offense is a specified offense against a minor, we need not determine whether offenses having an "element involving a sexual act or sexual contact with another" include those in which only an intent that a sexual act occur is required, not the act itself.

We recognize that the government contended to the district court only that Byun was a sex offender under § 16911(5)(A)(i); the government did not assert Byun was a sex offender under § 16911(5)(A)(ii). Although we do not, as a general rule, "consider issues not passed upon below," this court has discretion to consider an issue not raised to the trial court when it is "purely one of law and either does not affect or rely upon the factual record developed by the parties . . . or the pertinent record has been fully developed." *United States v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978). Whether Byun qualifies as a sex offender under § 16911(5)(A)(ii) is purely an issue of law, and the only facts relevant to this inquiry are the undisputed facts admitted by Byun in her plea agreement. Further, Byun is not prejudiced by our consideration of this question, which she specifically addressed in her briefs both to the district court and to this court, and which was discussed during oral argument. *See Patrin*, 575 F.2d at 712. Thus, we exercise our discretion to consider whether Byun qualifies as a sex offender under § 16911(5)(A)(ii), and we hold that she does.

None of the offenses of which Byun was convicted had solicitation as an element.

Even assuming that we can look to the underlying facts of Byun's crime, Byun's plea agreement does not conclusively establish that she solicited Seo to practice prostitution. The plea agreement states that "[b]etween January and March 31, 2000, defendant encouraged and induced Youn Be Seo . . . to come to Guam by offering to employ [her] at the Club" and that Byun "intended that . . . [Seo] would engage in sexual contact with the Club's customers, and perform sexual acts for money." The plea agreement makes clear that Byun induced Seo to come to the United States by offering her employment of some kind in her club, and that Byun intended that Seo would engage in prostitution once she arrived. But the plea agreement never explicitly states that Byun solicited, urged, advised, or otherwise incited Seo to engage in prostitution. It seems likely from the circumstances that such solicitation of Seo eventually occurred, but that fact was not explicitly admitted in the plea agreement. We thus cannot find, on the basis of the record, that Byun solicited a minor to practice prostitution.

[7] This determination is not, however, the end of the story. The category of "specified offense[s] against a minor" also includes a catchall provision for "conduct that by its nature is a sex offense against a minor." For two reasons, we conclude that Byun's offense likely falls within this category. First, the strong similarity of Byun's offense to at least one of the listed offenses, i.e., solicitation of a minor to practice prostitution, supports a conclusion that the catchall provision includes Byun's crime. *See Gutierrez v. Ada*, 528 U.S. 250, 255 (2000) ("[A] word is known by the company it keeps." (alteration in original) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)); *Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2003) (noting that "[w]here general words follow specific words in a statutory enumeration, the general words are construed to

embrace only objects similar in nature to those objects enumerated by the preceding specific words") (alteration in original) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-15 (2001)). As a common sense matter, transporting a minor to the United States with the intent that she engage in prostitution is no less "conduct that by its nature is a sex offense against a minor" than is soliciting a minor to the same end. The "transportation with intent" conduct in which Byun engaged was almost certain to end in Byun urging, advising, commanding, or otherwise inciting Seo to practice prostitution, unless Byun was deflected from carrying out her intent. Moreover, neither the transportation nor the solicitation crimes require that any prostitution actually occur, but both may well result in prostitution by a minor. The catchall "specified offense" category therefore likely includes crimes such as Byun's.

[8] Second, Byun's offense appears to be a "tier II" sex offense within the meaning of the statute, a circumstance that supports the conclusions both that it must be a "sex offense" of some kind, and, more specifically, that it is a "specified offense against a minor." The tier II sex offender category provides significant guidance in determining whether Congress intended that certain crimes be treated as sex offenses under SORNA.[9] Because an individual must be a sex offender before she can be a "tier II sex offender," it follows that Congress must have determined that those crimes listed in § 16911(3) (defining tier II offenses) were themselves "sex offenses."

[9] The tier II definition indicates that individuals whose "offense" is one of the listed crimes, or a crime "comparable

---

[9]Byun argues, correctly, that the "tier II" category does not provide the definition of a "sex offense"; that definition is contained in 16911(5). Nonetheless, the definition of "sex offense" is appropriately interpreted in the context of the statute as a whole, and the "tier II" category sheds significant light on the "sex offense" definition.

to or more severe than" them, when committed against a minor, are tier II sex offenders. One of the listed offenses in the tier II sex offender category, 18 U.S.C. § 2423(a), forbids knowingly transporting a minor in interstate or foreign commerce with the intent that the minor engage in prostitution. *Id.* The crime of which Byun was convicted, 8 U.S.C. § 1328, contains all of the elements of 18 U.S.C. § 2423(a), with the exception of the requirement that the victim be a minor.[10] Moreover, Byun's offense also seems to parallel, but for absence of the "minor" element, 18 U.S.C. § 1591, a tier II offense which makes criminal knowingly "transport[ing]" an individual in interstate or foreign commerce with knowledge "that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a). Assuming, as we have for this part of our analysis, that we may consider that Byun's victim was a minor, Byun's offense is "comparable to or more severe than" the listed tier II offenses under § 2423(a) and 1591(a) and therefore falls within the category of tier II offenses.

---

[10]8 U.S.C. § 1328 prohibits "directly or indirectly . . . import[ing]" an individual for purposes of prostitution, while 18 U.S.C. § 2423(a) prohibits "knowingly transport[ing]" a minor in interstate or foreign commerce for such purpose. Although the language of these two elements is somewhat different, it is clear from our case law that Byun was convicted of a crime with an element of "knowingly transporting" for purposes of 18 U.S.C. § 2423(a). We have held that evidence of an intent to import for purposes of prostitution is necessary for a conviction under 18 U.S.C. § 1328, so no conviction can be had under that statute without proving that the defendant knew she was transporting an individual in interstate commerce. *See United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1194 n.8 (9th Cir. 2000) (en banc) (citing *Pena-Cabanillas v. United States*, 394 F.2d 785, 789 n.4 (9th Cir. 1968)). Moreover, a conviction for violation of 18 U.S.C. § 2423(a) does not require that the defendant personally (or "directly") transport the victim: "knowing[ ] transport[ation]" occurs when a defendant "causes the transport of" a minor for purposes of prostitution. *United States v. Johnson*, 132 F.3d 1279, 1285 (9th Cir. 1997) (rejecting the argument that a defendant who had arranged with a foreign exchange program to have a Norwegian teenager travel to his home in California had not "knowingly transport[ed]" him).

That Byun's offense is comparable to a listed tier II offense supports not only the general conclusion that her crime is a "sex offense," but that it is, more particularly, a "specified offense against a minor." In general, the list of tier II sex offenses closely corresponds to the list of "specified offense[s] against a minor" in § 16911(7). Nearly all of the listed offenses in tier II necessarily involve minor victims, and many overlap significantly with the specified offenses against a minor.[11] For example, tier II offenses include "coercion and enticement" of a minor to engage in prostitution (18 U.S.C. § 2422(b)), § 16911(3)(A)(ii); "use of a minor in a sexual performance," § 16911(3)(B)(i); and "production or distribution of child pornography," § 16911(3)(B)(iii). As the tier II list — which, as noted, appears to include Byun's offense — informs our interpretation of "specified offense[s] against a minor," we are convinced that the offenses against minors listed as tier II either correspond directly to one of the spelled-out "specified offense[s] against a minor" listed in § 16911(7) or are included in the catchall category of "conduct that by its nature is a sex offense against a minor." Thus, if we may consider the fact that Byun's offense was in fact against a minor, her crime qualifies as a specified offense against a minor under the catchall category of "conduct that by its nature is a sex offense against a minor."

## B.

[10] We have assumed to this point that we may consider the fact that Byun committed her crime against a minor. The crime of which Byun was convicted, however, violation of 8 U.S.C. § 1328, does not have as an element that the victim was a minor. Our determination that Byun committed a "specified offense *against a minor,*" as well as that her offense is a tier II sex offense, thus depends on an examination of the underlying facts of Byun's crime, which reveal that one of

---

[11]Tier II also includes offenses that "occur[ ] after the offender becomes a tier I sex offender." § 16911(3)(C).

Byun's victims was only 17 years old. *See* § 16911(3)(A) (an offense is a tier II offense when, among other things, it is "committed against a minor"). Consequently, before we may finally conclude that Byun is a sex offender, we must consider whether the statute permits examination of the underlying fact of the age of Byun's victim, or rather requires a "categorical" approach as to that circumstance.

[11] In the contexts of immigration law and of the enhancement of criminal sentences, courts usually apply a categorical, or modified categorical, approach to determine whether the crime of which the defendant was convicted meets the statutory requirements to have immigration consequences or provides the basis for a sentencing enhancement, rather than allowing examination of the underlying facts of an individual's crime. *See, e.g., Taylor v. United States*, 495 U.S. 575, 602 (1990) (concluding that a categorical or a modified categorical, rather than a "factual approach," was required to determine whether the defendant had committed "burglary" for purposes of sentence enhancement); *Li v. Ashcroft*, 389 F.3d 892, 895-96 (9th Cir. 2004) (holding that to determine whether a crime of conviction is an aggravated felony, the court makes a categorical comparison between the generic crime and the crime of which the person has been convicted); *see also United States v. Rodriguez-Guzman*, 506 F.3d 738, 746-47 (9th Cir. 2007) (applying modified categorical approach, which permits examination of the record of conviction, in Sentencing Guidelines case because "the statute of conviction is overly inclusive"). *But cf. United States v. Belless*, 338 F.3d 1063, 1065-67 (9th Cir. 2003) (holding that for purposes of conviction under 18 U.S.C. § 922(g)(9) — possession of a firearm by one "who has been convicted in any court of a misdemeanor crime of domestic violence" — the earlier crime of conviction need not have as an element that the victim had a domestic relationship to the perpetrator); *Tokatly v. Ashcroft*, 371 F.3d 613, 622 (9th Cir. 2004) (stating that the categorical approach is not applied in the immigration

context when Congress has specifically made conduct, rather than conviction, the basis for removal).

In *Taylor*, the Supreme Court explained why the sentencing statute in question called for a categorical approach. First, the statute in *Taylor* referred to persons who had been "convic-t[ed]" of certain crimes, rather than persons who had "committed" such crimes, reflecting Congress's intent that "the sentencing court . . . look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Id.* at 600. Second, the legislative history of the act suggested that Congress "generally took a categorical approach to predicate offenses," because "no one suggested that a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case." *Id.* at 601. Third, the "practical difficulties and potential unfairness of a factual approach are daunting." *Id.*

**[12]** *Taylor* thus instructs that in determining whether a provision of federal law calls for a categorical approach or an examination of "the facts underlying prior convictions," we turn to the ordinary tools of statutory construction, relying primarily on the language of the statute but making reference to the legislative history and practical effects to the extent necessary to illuminate the meaning of the plain language. *See also Belless*, 338 F.3d at 1066-67 (determining whether a statute called for a categorical or non-categorical approach by relying primarily on the language of the statute, but also considering the practical concern that very few state statutes include as an element the conduct that Congress hoped to address).

**[13]** Applying this approach to the "tier II" category, we conclude that, as to whether an individual is a "tier II" offender, the language of the statute points strongly toward a non-categorical approach with regard to the age of the victim. The statute provides that an individual is a tier II sex offender when his or her crime is "comparable to or more severe than"

a violation of § 2423(a) *"when committed against a minor."* § 16911(3)(A) (emphasis added). The use of the word "committed," rather than "convicted" persuasively indicates that, in determining whether the victim of Byun's crime was a minor, we may consider not only the elements of the crime of which Byun was convicted but her actual conduct. *See Belless,* 338 F.3d at 1067 (assuming that use of "committed" with regard to one aspect of a crime allowed application of non-categorical approach with regard to that aspect); *cf. Taylor,* 495 U.S. at 600 (noting that the use of the word "convicted," rather than "committed," required an examination only of the elements necessary for a conviction, rather than any underlying acts).

[14] While the language of the statute is somewhat more ambiguous with regard to whether a categorical approach must be applied to all elements of a "specified offense against a minor," the close connection between "specified offense[s] against a minor" and tier II offenses, as well as the history of the statute, support the conclusion that a non-categorical approach to the age of the victim is permitted with respect to that category as well. Section 16911(1) defines a sex offender as "an individual who was *convicted* of a sex offense" (emphasis added), rather than an individual who committed, or engaged in conduct constituting, such an offense. But the statute then goes on to describe the two applicable definitions of "sex offense" in quite different ways: The language used in defining the first category of "sex offenses" suggests strongly that only a categorical approach is appropriate as to that category, as it includes only criminal offenses having an *"element* involving a sexual act or sexual contact with another." § 16911(5)(A)(I) (emphasis added). The specific reference to an "element" requires an analysis of the statutory elements, rather than an examination of the underlying facts. *See United States v. Sherbondy,* 865 F.2d 996, 1005 (9th Cir. 1988) (holding that the use of "the phrase 'as an element' requires an examination of the statute that delineates the

offense of which the defendant was convicted and precludes any inquiry into the defendant's actual conduct.").

In contrast, the "sex offense" category here pertinent, "a criminal offense that is a specified offense against a minor," contains no reference to the crime's "elements." Further, the definition of "specified offense[s] against a minor" begins with language stating that such offenses must be "against a minor" and then lists offenses such as "kidnapping," "false imprisonment," and "[u]se in a sexual performance," § 16911(7)(A), (B), (D), that do not refer to the identity of the victim. That is, the definition suggests that *any* kidnapping offense becomes a "specified offense against a minor" when the victim is a minor. Finally, and critically, the list of specified offenses against a minor includes "[a]ny *conduct* that by its nature is a sex offense against a minor," § 16911(7)(I) (emphasis added), suggesting again that for the category of "specified offense[s] against a minor," it is the underlying "conduct," not the elements of the crime of conviction, that matter.

[15] In sum: Congress did not define "specified offense against a minor" in terms of elements, spoke of "an offense against a minor" and then listed broad offenses such as kidnapping, and expressly referred to "conduct" in one part of the definition. The tier II sex offender provision also clearly permits a non-categorical approach to determining the age of the victim of the crime, and given the close connection between these two sections of the statute, Congress likely intended that both be interpreted similarly with regard to ascertaining the age of the victim. Given all these textual clues, and even though use of the word "convicted" at the outset with regard to "sex offender[s]" creates a modicum of ambiguity, the best reading of the statutory structure and language is that Congress contemplated a non-categorical approach as to the age of the victim in determining whether

a particular conviction is for a "specified offense against a minor."[12]

[16] The legislative history of the statute fully supports this conclusion. This history shows that Congress intended to include all individuals who commit sex crimes against minors, not only those who were convicted under a statute having the age of the victim as an element. The Act is entitled the "Adam Walsh *Child* Protection and Safety Act," and the legislative history reveals substantial discussion of the necessity of identifying all child predators.[13] *See, e.g.*, H.R. REP.

---

[12]We have previously considered whether a statute might permit one element or aspect of a crime to be determined by looking to the underlying facts, while a "conviction" is required as to the other elements of the crime. In *United States v. Belless*, we concluded that, under 18 U.S.C. § 922(g)(9), which makes possession of a firearm illegal for anyone "who has been convicted in any court of a misdemeanor crime of domestic violence," domestic violence crimes were "those crimes that are *in fact* committed against persons who have a domestic relationship specified in the statute." 338 F.3d at 1066 (emphasis added). *See also White v. Dept. of Justice*, 328 F.3d 1361, 1364-67 (Fed. Cir. 2003) (similarly holding that a non-categorical approach was permitted with regard to the nature of the defendant's relationship with the victim). In *Tokatly v. Ashcroft*, in contrast, we concluded that a categorical approach must be applied with respect to all aspects of a "crime of domestic violence" in the immigration context, despite the fact that the immigration statute arguably drew a distinction between the element of "violence" and the requirement that the crime be committed within a domestic relationship. 371 F.3d at 624. Our decisions in *Tokatly* and *Belless* are not easily reconciled. *See Cisneros-Perez v. Gonzales*, 465 F.3d 386, 392 (9th Cir. 2006). We need not determine, however, whether this case is more similar to *Belless* or *Tokatly*, because there is substantially more support, both in the text of the statute and the legislative history, that Congress intended that the identity of the victim may be established without application of a categorical approach.

[13]Much of what ultimately became the Adam Walsh Act was introduced in the House in 2005 as part of a larger bill containing provisions on gang violence and protection for federal judges. H.R. 3132, 109th Cong. (2005). H.R. 3132 contains the same definition of a "specified offense against a minor," but does not contain the definitions of different tiers of sex offenders. The bill was reintroduced in the house in 2006 as H.R. 4472,

No. 109-218, at 22-23 (2005) (stating, in a section entitled "Background and Need for the Legislation," that "[t]he sexual victimization of children is overwhelming in magnitude," and noting that the median age of the victims of imprisoned sex offenders in one study "was less than 13 years old"); 152 Cong. Rec. H657, H676 (daily ed. Mar. 8, 2006) (statement of Rep. Sensenbrenner) (purpose of the act is to "better protect our children from convicted sex offenders"); *id.* at H682 (statement of Rep. Poe) (bill will "mak[e] sure that our children are safer" and target "child predators"); *id.* at S8013 (statement of Sen. Hatch) (in explaining his support for the bill, stating "I am determined that Congress will play its part in protecting the children of . . . America"). The language of the statute similarly evidences Congress's intent to require all those who commit sex crimes against children to register as sex offenders. The section defining "specified offense[s] against a minor" is entitled "[e]xpansion of definition of 'specified offense against a minor' to include all offenses by child predators," § 16911(7). *See Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 529 (1947) (noting that "[f]or interpretative purposes, [the heading of a section is] of use . . . when [it] shed[s] light on some ambiguous word or phrase," but it "cannot . . . limit that which the text makes plain").[14]

---

109th Cong. (2006), without a new report and was passed under "suspension of the rules," according to which "floor debate is limited, all floor amendments are prohibited, and a two-thirds vote is required for final passage." Elizabeth Rybicki, CRS Report for Congress, *Suspension of the Rules in the House: Principal Features, available at* http://www.rules.house.gov/Archives/98-314.pdf. The Senate version of the bill, S. 1086, 109th Cong. (2006), was reported out of committee in March of 2006 without a written committee report. The cited House Report was thus prepared only with regard to H.R. 3132.

[14]Were we interpreting a criminal statute, we would be considerably more hesitant to conclude that an element, such as the age of a victim, can be determined by a judge after examining the underlying facts of a crime. As the Supreme Court noted in *Shepard v. United States*, 544 U.S. 13

[17] Given the language and structure of the statute, as well as its legislative history, we conclude that, as to the age of the victim, the underlying facts of a defendant's offense are pertinent in determining whether she has committed a "specified offense against a minor" and is thus a sex offender.[15] Because Byun's plea agreement reveals that she in fact imported a minor for purposes of prostitution, her offense is a "specified offense against a minor" and she is a sex offender under SORNA.

**AFFIRMED.**

---

(2005) (plurality opinion), allowing a judge in a criminal proceeding to look beyond charging documents to the underlying facts of an earlier offense may well implicate the Sixth Amendment's requirement that all facts, other than that of a prior conviction, that increase the maximum punishment for a crime must be proven to a jury beyond a reasonable doubt. *Id.* at 25. Here, however, we are faced not with a statute that imposes criminal punishment, but rather with a civil statute creating registration requirements. *See Smith v. Doe*, 538 U.S. 84, 105-06 (2003) (holding that Alaska's sex offender registration statute is civil and nonpunitive, and therefore retroactive application of the Act does not violate the Ex Post Facto clause); *Hatton v. Bonner*, 356 F.3d 955, 961-67 (9th Cir. 2004) (reaching the same conclusion regarding California's sex offender registration statute). Byun does not argue that Sixth Amendment protections are at issue here. We do not, of course, decide any Sixth Amendment question, as none is before us.

[15]As it is not necessary to our holding, we draw no conclusion as to whether a non-categorical approach is permitted with regard to any facts other than the age of the victim.